UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STANLEY RANKIN,

    Plaintiff,

  v.

CHICAGO PARK DISTRICT; J.D. OSTERGAARD; and SIDNEY LEWIS,

    Defendants.

No. 20 C 794

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Stanley Rankin alleges that his former employer, the Chicago Park District, and his supervisors, discriminated and retaliated against him based on his race, age, and disability. Defendants have moved to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 20. That motion is granted in part and denied in part.

**Legal Standard**

Defendants seeks dismissal of some claims for failure to exhaust pursuant to Federal Rule of Civil Procedure 12(b)(1). Rankin argues that Rule 12(b)(1) is the incorrect rule here because exhaustion under Title VII is not jurisdictional. *See* R. 25 at 2. It is true that "[e]xhaustion is not a jurisdictional issue, but a condition precedent to bringing a claim under [Title VII]." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). However, a Court may properly "ignore the mischaracterization" of a motion. *See Thompson v. Cope*, 900 F.3d 414, 425 (7th Cir. 2018). And jurisdictional

or not, dismissal for failure to exhaust is without prejudice. *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1008 (7th Cir. 2019).

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

**Background**

Rankin is Black. He was born in 1961 and suffers from congestive heart failure. He started working as an attendant for the Park District in October 2015. R. 1 ¶ 15. In June 2018, the Park District assigned Rankin to work at Berger Park. *Id.* ¶ 17.

Rankin's supervisor at Berger was defendant J.D. Ostergaard, who is white and younger than 40 years old. *Id.* ¶¶ 18, 21. Rankin alleges that Ostergaard often accused him of not sufficiently cleaning the park facilities in a nitpicking manner and sometimes blamed Rankin for problems that were not his fault. *Id.* ¶ 22. Rankin also claims that Ostergaard set unrealistic expectations for cleaning the park. For example, Ostergaard allegedly sometimes overscheduled events at the park facilities so that Rankin could not possibly finish cleaning them before the end of his shift. *Id.* ¶¶ 23-24. In June, July, and August 2018, Ostergaard threatened to write up Rankin. *Id.* ¶ 25.

The other attendant at Berger was Hispanic. *Id.* ¶ 19. Rankin alleges that Ostergaard did not similarly criticize the other attendant's work or set unrealistic expectations for him. *Id.* ¶¶ 25-26.

In April 2019, Rankin's congestive heart failure condition worsened. *Id.* ¶ 27. Ostergaard approved sick time for Rankin to seek treatment. *Id.* ¶ 31.

During his time away from work, Rankin visited Mandrake Park where he used to work. *Id.* ¶¶ 33, 35. The son of Rankin's former colleague at Mandrake was Rankin's tax preparer, and Rankin visited the park to give his former colleague his tax documents to deliver to her son. *Id.* The manager of Mandrake Park, defendant

Sidney Lewis, prohibited Rankin from entering the park building and told Rankin he was barred from the premises unless he had official business there. *Id.* ¶ 34.

Following that incident, Rankin received a "Corrective Action Meeting Notice" from the Park District stating that he had violated Park District rules by failing to be "respectful and polite on a park property when you attempted to use aggressive force towards a Park Supervisor" when he visited Mandrake Park. *Id.* ¶ 37. Rankin disputed the charge. *Id.* But on August 13, 2019, Rankin was fired for his alleged conduct at Mandrake Park and for abusing sick leave. *Id.* ¶ 38.

Prior and subsequent to his termination, Rankin filed several administrative complaints with the Illinois Department of Human Rights and the EEOC. *See id.* ¶¶ 10-14. Defendants attached to their brief copies of documents from these and additional administrative complaints Rankin filed. Rankin's allegations about the dates of his administrative complaints do not match the documents Defendants have provided. But Rankin does not dispute the authenticity of these documents and they provide a more complete picture of Rankin's efforts to administratively exhaust his claims. So the following recitation of Rankin's administrative efforts is based on the documents provided by Defendants:

> January 28, 2019, **IDHR charge No. 2019CA1179** (EEOC 21BA90526), alleging harassment based on age and race. R. 21-1 at 1-4 (Defendants' Ex. A). The IDHR issued a dismissal letter (the equivalent of an EEOC Right to Sue letter) for this charge on November 6, 2019. R. 21-1 at 11-19.
>
> June 15, 2019, **IDHR charge No. 2019CE2225,** alleging retaliation for the January 28 charge. (This seems to correspond to a May 1, 2019, EEOC charge No. 440-2019-0448). R. 21-1 at 5-7 (Defendants' Ex. B). Rankin withdrew this charge. R. 21-1 at 21.

4

> August 19, 2019, **EEOC charge 440-2019-06990**, alleging that he was fired because of his race, age, and in retaliation. R. 21-1 at 9 (Defendants' Ex. D). Rankin requested a Right to Sue letter from the EEOC for this charge on December 23, 2019. R. 21-1 at 24.
>
> September 10, 2019, **IDHR charge No. 2020CE0302** and EEOC charge No. 440-2019-05955 (received July 8, 2019?), alleging retaliation for the May 1 charge. R. 21-1 at 8 (Defendants' Ex. C). Rankin withdrew this charge. R. 21-1 at 23.

Rankin does not allege that he ever received a Right to Sue letter from the EEOC.

Rankin filed this lawsuit on February 3, 2020. He brings federal discrimination and retaliation claims, and a state law breach of contract claim. He makes his claims via seven counts in his complaint:

> *Count I* claims race discrimination in violation of Title VII against the Park District;
>
> *Count II* claims race discrimination in violation under Section 1983 against all defendants;
>
> *Count III* claims race discrimination in violation of Section 1981 against all defendants;
>
> *Count IV* claims age discrimination in violation of the Age Discrimination in Employment Act against the Park District;
>
> *Count V* claims retaliation in violation of Title VII against the Park District;
>
> *Count VI* claims breach of contract against the Park District; and
>
> *Count VII* claims disability discrimination in violation of the Americans with Disabilities Act against the Park District.

Defendants argue that all claims should be dismissed for failure to exhaust administrative remedies and/or failure to make plausible allegations.

**Analysis**

I.    **Exhaustion**

    A.    **Title VII & ADA**

In order to bring a claim under Title VII and the ADA, a plaintiff must first file a complaint with the EEOC and receive a "Right to Sue" letter. *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (Title VII); *Arrigo v. Link*, 836 F.3d 787, 793 (7th Cir. 2016) (ADA). Rankin concedes that he never received a right to sue letter from the EEOC.

Rankin argues that he "should be excused from having further pursued his administrative remedies because plaintiff's claims could not be timely considered, and it would be futile given the actions of the Defendants towards the Plaintiff in the initial charge." R. 25 at 4. Rankin contends that he was required to file this complaint within 90 days of receiving a dismissal letter from the IDHR on November 9, 2019. It is true that Rankin had 90 days to pursue the claims raised in the charge that precipitated the IDHR's letter. But that does not excuse him from fully exhausting any additional claims.

Furthermore, Rankin's futility argument is meritless. He argues that Defendants' actions made administrative exhaustion futile. But Defendants' alleged actions are irrelevant to his ability to exhaust with the EEOC.

Rankin also argues that he "may litigate claims that were not included in an EEOC charge only if the underlying events are reasonably related to the charges in the EEOC complaint." R. 25 at 4. That is an accurate statement of the law regarding

6

the scope of claims that may be pursued in federal court on the basis of the issuance of an EEOC right to sue letter. But Rankin was never issued an EEOC right to sue letter for any claim. Maybe Rankin intends to argue that the dismissal letter he received from the IDHR is a sufficient basis to demonstrate exhaustion of his federal claims. But he has cited no authority to that effect, and the Court has found none. Indeed, many courts have held that an EEOC right to sue letter is insufficient to exhaust Illinois state law claims. *See, e.g., Hilliard v. New Horizon Ctr. for Developmentally Disabled, Inc.*, 2020 WL 2935080, at *4 (N.D. Ill. June 3, 2020) (citing *Jimenez v. Thompson Steel Co., Inc.*, 264 F. Supp. 2d 693, 695 (N.D. Ill. 2003)). This indicates that the converse is also true, meaning that Rankin's IDHR letter is insufficient to exhaust his federal claims.

It appears that Rankin requested a right to sue letter from the EEOC in December 2019 for the claim alleging that he was fired because of his race and age. So maybe a right to sue letter for those charges is yet to come. If so, Rankin would have 90 days from issuance of that letter to pursue those charges in federal court. But at least for now, Rankin's Title VII and ADA claims must be dismissed for failure to exhaust.

    **B.   ADEA**

In contrast to Title VII and the ADA, the ADEA requires filing a complaint with the EEOC, but "does not require a plaintiff to obtain a right-to-sue letter from the EEOC to pursue his claims in court." *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 400 n.2 (7th Cir. 2019). As explained above, Rankin previously filed a

complaint with the EEOC. Therefore, Rankin has administratively exhausted his age discrimination claims.

## II. Plausibility

Having failed to exhaust his Title VII and ADA claims, Rankin is left with his ADEA claim (which he sufficiently exhausted) and his Section 1983 and Section 1981 claims (for which administrative exhaustion is not required). *See Wilson v. Ill. Dep't of Fin. & Prof'l Regulation*, 871 F.3d 509, 512 (7th Cir. 2017) (Section 1983); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007) (Section 1981). The Seventh Circuit applies the same standard to civil rights claims in the employment context brought pursuant to Title VII, the ADEA, Section 1983, and Section 1981. *See Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020) ("In general, the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983."); *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009) ("We apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII.").

Rankin claims that Ostergaard's orders were excessive and constituted harassment based on his race and age. Rankin also claims that he was fired because of his race and age.

### A. Harassment

To state a claim for harassment, "a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or

pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833-34 (7th Cir. 2015). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship." *Id.* (emphasis original).

Rankin has not alleged that he was subject to any actions that could be described as "harassment." "Harassment" is "intimidation, ridicule, and insult," and the like. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). Rankin does not allege that he was subjected to any such conduct. Rather, he alleges that Ostergaard criticized his work and gave him too much work to do in too little time. This is "normal workplace friction" that is not actionable as harassment. *See Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) ("transfers, a late overtime payment, his salary, and difficulties with managers . . . . is normal workplace friction"); *see also Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002) (no hostile work environment claim where employee alleged that her supervisor "treated her in a rude, abrupt, and arrogant manner, ignored her work-related suggestions and failed to keep her informed about changes at work"); *Earl v. Jewel Food Stores, Inc.*, 2019 WL 2772526, at *5 (N.D. Ill. July 2, 2019) (harassment not plausible based on allegations that the plaintiff was "reprimanded for leaving prior to the end of his shift during the winter time to start his car and was falsely accused

9

of sleeping, eating, and being lazy at work"). Therefore, Rankin has failed to state a claim for harassment under the ADEA, Section 1983, and Section 1981.

### B. Discrimination

To state a claim for discrimination in the employment context, a plaintiff need only identify: (1) "the type of discrimination," (i.e., race, sex, age, etc.); (2) the person responsible; and (3) when it occurred. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). Because intent can be alleged generally, specific allegations of discriminatory intent are not required, and the plaintiff need "allege only that the employer instituted a specific adverse employment action against him based on his [race, sex, age, etc.]." *Phillips v. Baxter*, 768 F. App'x 555, 559 (7th Cir. 2019) (citing *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014); *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013)). "The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination." *Carlson*, 758 F.3d at 827. This is because "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Id.*

Here, Rankin is Black and over the age of 40 and was fired by Defendants. That is all he needs to allege to state claims for race and age discrimination. This is not to say that Rankin has *proven* his claims by any means. Rankin will eventually need to show that Defendants acted with discriminatory intent. But the Seventh

10

Circuit has explained that such a showing is not required at the pleading stage.[1] For now, Rankin has sufficiently alleged that he is a member of a protected class, that he suffered an adverse employment action, and that Defendants were responsible for that action. *See Swanson*, 614 F.3d at 404-05. Rankin has done this. Therefore, his claims of discriminatory termination under the ADEA, Section 1983, and Section 1981 will proceed to discovery.

## IV. *Monell*

To state a claim against the Park District for race discrimination under Section 1983, Rankin must plausibly allege that his termination was the product of a Park District policy, custom or practice, or the decision of a Park District policy maker. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Rankin does not allege that his termination was the product of a discriminatory Park District policy, custom, or practice. And nothing in the complaint permits that plausible inference. Furthermore, Rankin does not allege or argue that either Ostergaard or Lewis are final policymakers for the Park District. Therefore, Rankin's *Monell* claim against the Park District is dismissed.

---

[1] Defendants argue that Rankin's discrimination claims should be dismissed because he "fails to identify any similarly situated non-African American who was treated more favorably." R. 21 at 8. This is a potential method of proof on summary judgment that is irrelevant to whether a plaintiff has stated a claim. *See Geinosky v. City of Chicago*, 675 F.3d 743, 748 n.3 (7th Cir. 2012) ("Even in a case where a plaintiff would need to identify a similarly situated person to prove his case . . . we see no basis for requiring the plaintiff to identify the person *in the complaint*.") (emphasis in original). The Court is too frequently confronted with attempts by defendants in employment cases to apply the summary judgment standard to a motion to dismiss for failure to state a claim. This is a waste of time and resources that could be avoided by more careful attention to the correct standard.

## VI. Breach of Contract

In addition to his civil rights claims, Rankin alleges that the Park District breached its contract with him by: (1) discriminating against him; (2) failing to provide him with a hearing as to his sick leave in April 2019; and (3) failing to provide him with progressive discipline. R. 1 at 1, 75-77. Under Illinois law, an employment relationship without a fixed duration is terminable at will by either party. *See Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 489 (1987). The presumption that an individual is hired as an at-will-employee can be overcome only be demonstrating that plaintiff and defendant contracted otherwise. *LaScola v. US Sprint Communications*, 739 F. Supp. 431, 434-35 (N.D. Ill. 1990).

Rankin alleges that he had an enforceable employment contract with the Park District through its "catalogs, manuals, handbooks, policy statements, brochures, and Collective Bargaining Agreement." R.1 at 75. For a handbook or other policy statement to create a valid contract: "(1) the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made, (2) the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer, and (3) the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Duldulao*, 115 Ill. 2d at 490.

While Rankin alleges that "the language in the Chicago Park District employee handbook contained clear promises to the employees," he does not point to any specific language from the handbook or any specific policy statement that constitutes a "clear

12

promise." Furthermore, Rankin's complaint is devoid of any specific language from the employee handbook or collective bargaining agreement which indicates set policies or procedures the Park District is obligated to follow concerning a hearing as to his sick leave or progressive discipline. Absent language plausibly establishing a promise of employment rights, Rankin cannot state a claim for breach of an enforceable contract. Therefore, Rankin's breach of contract claim is dismissed.

## Conclusion

Therefore, Defendants' motion to dismiss [20] is denied in part and granted in part. The motion is denied in that Rankin's race discrimination claims against Ostergaard and Lewis in Count II and Count III, and Rankin's age discrimination claim against the Park District in Count IV will proceed. The motion is granted in that Count I, Count V, Count VI, and Count VII are dismissed without prejudice. If Rankin believes he can cure the deficiencies with the dismissed claims described by this opinion, he may file a motion for leave to amend by November 20, 2020. If Rankin files such a motion, it should be supported by a brief of no more than five pages, attaching a proposed amended complaint highlighting the amendments in redline. A status hearing is set for November 2, 2020. Prior to the status hearing, the parties should meet and confer regarding a discovery schedule. Rankin should be prepared to state at the status hearing whether he intends to file a motion for leave to amend. If Rankin does not file a motion for leave to amend by November 20, 2020, Count VI and the harassment claims will be dismissed with prejudice.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: October 19, 2020

14